UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                                    CASE NO.

      Plaintiff,

vs.

BASS PRO OUTDOOR WORLD, L.L.C.,
a Foreign Limited Liability Company,
and BPS DIRECT, L.L.C.,
a Foreign Limited Liability Company,
D/B/A BASS PRO SHOPS OUTDOOR WORLD

      Defendant.
_____/

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant, BASS PRO SHOPS OUTDOOR WORLD, LLC., a foreign limited liability company, and BPS DIRECT, L.L.C., a Foreign Limited Liability Company, d/b/a BASS PRO SHOPS OUTDOOR WORLD (hereinafter referred to as "BASS PRO SHOPS OUTDOOR WORLD"), for declaratory and injunctive relief, and damages, and alleges as follows:

This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

1)     This action is also brought pursuant to 28 C.F.R. Part 36.

2)     This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

3)      Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

4)      Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a long sleeve shirt and a trucker cap.

7)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)     Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)     Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)     At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision whereby his vision fluctuates from 20/250 to 20/800.

13)     Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing his environment.  As such, Plaintiff is a member of a protected class under the ADA,

42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)     In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)     Plaintiff is limited in the performance of major life activities due to his visual disability and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

16)     Plaintiff uses the computer regularly, but due to his visual disability, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist him, Plaintiff uses NVDA screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)     "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user,

and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017)*.

18)     Plaintiff frequently accesses the internet. Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)     Defendant, BASS PRO SHOPS OUTDOOR WORLD, is a foreign limited liability company authorized to do business and doing business in the State of Florida.

20)     Defendant, BASS PRO SHOPS OUTDOOR WORLD, is a company that sells fishing equipment, boating supplies, shooting equipment, hunting equipment, camping equipment, men's, women's, and children clothing, shoes, bikes, truck and auto accessories, home décor, outdoor home décor, furniture, toys, kitchen and dining supplies, outdoor cooking equipment, food and drinks, books and DVDs, and holiday décor. There is a retail location in Miami-Dade County.

21)     At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "BASS PRO SHOPS OUTDOOR WORLD". The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)     Because Defendants are a store open to the public, each of Defendants' physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.basspro.com/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA. The website also services Defendant's physical stores by providing information on its brand and other information that Defendant is interested in communicating to its customers about its physical locations.

24)     Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendants' retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendants' stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendants' brick-and-mortar stores that must comply with all requirements of the ADA. The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled

public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

25)    Plaintiff sought to, seeks to and intends to patronize, in the near future once the Website's access barriers are removed or remedied, one or more of Defendants' physical retail locations, check store hours and product pricing and place online orders. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

26)    Traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience, thus the opportunity to shop and pre-shop Defendants' products, plan his visits, and to compare products, services, prices, sales, discounts, and promotions are important and necessary accommodations for Plaintiff because Defendants have not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

27)    During the month of December 2022, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations and with the intent to make a purchase through the website or at one of Defendant's physical stores. Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

28)     Plaintiff utilized NVDA ("Screen Reader Software") that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Plaintiff attempted to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

29)     Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

System settings while doing the review:

*Operating system: Windows 10*

*Browser: Google Chrome v. 104.0.5112.102*

*Screen Reader: NVDA v. 2022.3.2*

List of violations encountered:

Violation 01: When a user submits his cell phone number to get $10 OFF their $75 order, the message that is immediately displayed prompting them to check their texts and reply Y to confirm subscription is not rendered in an audible format. Because of this, the user is unaware that there's an extra step to completing the sign-up process.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

URL Where Issue Was Encountered: https://www.basspro.com/shop/en#

Screen Capture Evidence:

https://www.dropbox.com/s/dl8imlwmgh2m6bk/2022_12_05_171332_01.mp4?dl=0

Violation 02: When the *Men's Shirts & Tops* page loads, a modal comes up that offers the user $10 OFF their $75 order. The modal, however, doesn't receive keyboard operability focus. The focus remains on the main products page. User is unable to easily shift focus to the modal and activate the offer.

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

URL Where Issue Was Encountered: https://www.basspro.com/l/mens-shirts-tops

Screen Capture Evidence:

https://www.dropbox.com/s/c9pagig6nti7f6h/2022_12_05_171332_02.mp4?dl=0

Violation 03: The mechanism (*Skip to Main Content* link) for bypassing blocks of content that are repeated on multiple Web pages (e.g., main menu) does not work as intended. When the user activates it, the focus remains on the top navigation block.

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.1 Bypass Blocks (Level A).

URL Where Issue Was Encountered: https://www.basspro.com/l/mens-shirts-tops

Screen Capture Evidence:

https://www.dropbox.com/s/x752js5nh1qzqas/2022_12_05_171332_03.mp4?dl=0

Violation 04: When the user activates a *FILTER BY* check box (e.g., In Stock), the keyboard operability focus shifts to the footer of the page. The focus should remain within the *FILTER BY* section or shift to the *Search Results* section. Instead the user has to cycle through the numerous links within the footer to get back to the main content.

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

URL Where Issue Was Encountered: https://www.basspro.com/l/mens-shirts-tops#nf[maxavailquantity]=10..9999999

Screen Capture Evidence:

https://www.dropbox.com/s/rbp5sb5nkyabv50/2022_12_05_171332_04.mp4?dl=0

Violation 05: Within the detail page for a product, the button indicating the color that has been selected has an audible label that erroneously states *radio button not checked*. When in fact it has been checked. User has no way of verifying that the color selection made is the one that's checked and active.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

URL Where Issue Was Encountered: https://www.basspro.com/shop/en/dri-duck-ace-jacket-for-men

Screen Capture Evidence:

https://www.dropbox.com/s/pem0zbgow0iq5p1/2022_12_05_171332_05.mp4?dl=0

Violation 06: Within the detail page for a product, the button indicating the size that has been selected has an audible label that erroneously states *radio button not checked*. When in fact it has been checked. User has no way of verifying that the size selection made is the one that's checked and active.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

URL Where Issue Was Encountered: https://www.basspro.com/shop/en/dri-duck-ace-jacket-for-men

Screen Capture Evidence:

https://www.dropbox.com/s/nfpabktee1v6xzt/2022_12_05_171332_06.mp4?dl=0

Violation 07: Within the detail page for a product, when the user activates the *Size Guide* button, it results in a new page being opened. There's no audible warning that this will happen and that keyboard operability focus will shift to that new page.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

URL Where Issue Was Encountered: https://www.basspro.com/shop/en/dri-duck-ace-jacket-for-men

Screen Capture Evidence:

https://www.dropbox.com/s/7gjy0uv49gpwoxo/2022_12_05_171332_07.mp4?dl=0

Violation 08: Within the detail page for a product, the (-) button that precedes the quantity has an audible label that gives no context as to what it is for. It's just labeled *Button.*

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

URL Where Issue Was Encountered: https://www.basspro.com/shop/en/dri-duck-ace-jacket-for-men

Screen Capture Evidence:

https://www.dropbox.com/s/jzvehaqx8t5lkna/2022_12_05_171332_08.mp4?dl=0

Violation 09: Within the detail page for a product, when the user activates the (+) button with the intention of increasing the quantity, there's no audible label confirming that it has been increased.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

URL Where Issue Was Encountered: https://www.basspro.com/shop/en/dri-duck-ace-jacket-for-men

Screen Capture Evidence:

https://www.dropbox.com/s/y0nigfxtvbi49lx/2022_12_05_171332_09.mp4?dl=0

Violation 10: Functionality of the content is not operable through a keyboard interface. When the user activates the drop-down button for adding an item to the wish list, the sign in functionality that is displayed, is not accessible via keyboard. This prevents the user from being able to sign in, create a wish list and add items to it.

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

URL Where Issue Was Encountered: https://www.basspro.com/shop/en/dri-duck-ace-jacket-for-men

Screen Capture Evidence:

https://www.dropbox.com/s/jm36dafxp7qrh7q/2022_12_05_171332_10.mp4?dl=0

Violation 11: *Standard 3.3.3. Error Suggestion* notes that if an input error is automatically detected and suggestions for correction are known, then the suggestions need to be provided to the user. When the user enters an incorrect promo code, the error suggestion is not rendered in an audible format. The user is not aware of the errors that are detected.

Applicable WCAG 2.1 Standard at Issue: 3.3.3 Error Suggestion (Level A).

URL Where Issue Was Encountered:

https://www.basspro.com/shop/OrderShippingBillingView?catalogId=3074457345616676768&langId=-1&storeId=715838534&krypto=MMCbdZBhqAM36w1Ihpk1StcCv2rUfU5lNq1sZqBtK4fzT5en3HgO40T9uEPoqdC9mrSv3SX5kwNSx8a5Z0mFJmRRQr86h%2FXlVyCm6dKJsrmQeVJ%2Fz4j8uwcXHVJKZq6lRU7gYJSpMEZd%2B2n6Xy8C8HM87KRH2VMfpuQzFylXV8UETGGODlJMlWr2MHxPXejLC3%2FW%2Fz6V7ax8JnlnU2VZoLsEkGn

ovXn2KwHgT3qYKGrgxKfYpUzvc4IgXZCHo5UU3qITHdaM0lXF8g7EuDJvJZbZQr2

86OIoQPJSgbuwP7SQwkBFmJaSuND46p%2FI86pcF8CQfOhP1pnIuJhpaFdZUx9D99k

nf8LyL9kRYWBPZdDKMeSpOiC5KhAPzYIQ3iNzxXgfNoVXDEsjRaWmLYqbIk5S

Ms0JkbyN9DFOEpXlhCGK3qvOZr1LZY7XPu5rBJw5xWWTX%2FC56g2gSQk5izQz

CY1buTpOY5I99EpMgPSNuB8%3D

Screen Capture Evidence:

https://www.dropbox.com/s/gvfq1xprxsv0x6o/2022_12_05_171332_11.mp4?dl=0

Violation 12: *Standard 3.3.3. Error Suggestion* notes that if an input error is
automatically detected and suggestions for correction are known, then the suggestions
need to be provided to the user. When the user enters an incorrect gift card and or pin, the
error suggestion is not rendered in an audible format. The user is not aware of the errors
that are detected.

Applicable WCAG 2.1 Standard at Issue: 3.3.3 Error Suggestion (Level A).

URL Where Issue Was Encountered:

https://www.basspro.com/shop/OrderShippingBillingView?catalogId=307445734561667

6768&langId=-

1&storeId=715838534&krypto=MMCbdZBhqAM36w1Ihpk1StcCv2rUfU5lNq1sZqBtK

4fzT5en3HgO40T9uEPoqdC9mrSv3SX5kwNSx8a5Z0mFJmRRQr86h%2FXlVyCm6dK

JsrmQeVJ%2Fz4j8uwcXHVJKZq6lRU7gYJSpMEZd%2B2n6Xy8C8HM87KRH2VMfp

uQzFylXV8UETGGODlJMlWr2MHxPXejLC3%2FW%2Fz6V7ax8JnlnU2VZoLsEkGn

ovXn2KwHgT3qYKGrgxKfYpUzvc4IgXZCHo5UU3qITHdaM0lXF8g7EuDJvJZbZQr2

86OIoQPJSgbuwP7SQwkBFmJaSuND46p%2FI86pcF8CQfOhP1pnIuJhpaFdZUx9D99k

nf8LyL9kRYWBPZdDKMeSpOiC5KhAPzYIQ3iNzxXgfNoVXDEsjRaWmLYqbIk5S

Ms0JkbyN9DFOEpXlhCGK3qvOZr1LZY7XPu5rBJw5xWWTX%2FC56g2gSQk5izQz
CY1buTpOY5I99EpMgPSNuB8%3D

 Screen Capture Evidence:

https://www.dropbox.com/s/u3ecngz28x9hzbi/2022_12_05_171332_12.mp4?dl=0

30)     Although the Website appeared to have an "accessibility" statement displayed and an
"accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested,
still could not be effectively accessed by, and continued to be a barrier to, blind and visually
disabled persons, including Plaintiff as a completely blind person. Plaintiff, although he attempted
to access the statement, thus, was unable to receive any meaningful or prompt assistance through
the "accessibility" statement and the widget/plugin to enable him to quickly, fully, and effectively
navigate the Website.

31)     The fact that Plaintiff could not communicate with or within the Website left him feeling
excluded, as he is unable to participate in the same shopping experience, with the same access to
the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical
locations as the non-visually disabled public.

32)     Plaintiff desires and intends, in the near future once the Website's access barriers are
removed or remedied, to patronize one or more of Defendants' physical stores and to use the
Website, but he is presently unable to do so as he is unable to effectively communicate with
Defendants due to his severe visual disability and the Website's access barriers. Alternatively, as
a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and
communicate with Defendants through the Website due to his severe visual disability and the
Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual

disabilities, will suffer continuous and ongoing harm from Defendants' intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

33)     On information and belief, Defendants have not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

34)     On information and belief, Defendants have not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

35)     On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

36)     On information and belief, Defendants have not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

37)     On information and belief, Defendants have not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

38)     On information and belief, Defendants have not instituted a Bug Fix Priority Policy.

39)     On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

40)     Defendants have not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

41)     Defendants have not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendants will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

42)     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

43)     Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendants' products offered on the Website and in the physical stores from their homes.

44)     Defendants thus have not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

45)     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

46)     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

47)     Defendants are, and at all relevant times have been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

48)     Defendants are, and at all relevant times have been, aware of the need to provide full access to all visitors to the Website.

49)     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

50)     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendants' unlawful and discriminatory practices in connection with its website access and operation.

51)     Notice to Defendants is not required because of Defendants' failure to cure the violations.

52)     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

53)     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

**COUNT I – VIOLATION OF THE ADA**

54)     Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

55)     Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

56)     Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations, purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendants' physical locations. Further, the Website also serves to augment Defendants' physical stores by providing the public information about the stores and by educating the public as to Defendants' brand and available products merchandise sold through the Website and in the physical stores.

57)     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58)     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59)     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60)     The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61)     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendants have made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

62)     The Website was subsequently visited by Plaintiff's expert in December and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendants thus have made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Raul Marquez, attached hereto and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63)     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64)     There are readily available, well-established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendants' business nor would it result in an undue burden to Defendants.

65)     Defendants have violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

66)     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

67)     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R.§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68)     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69)     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70)     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71)     As a direct and proximate result of Defendants' failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendants' Website and its physical stores.

72)     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73)     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

i.      Require Defendants to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendants' policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Website and the physical locations.

ii.     Require Defendants to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period

prior to the Website's being made readily accessible, provide an effective alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

iii.       Require Defendants to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendants' stores and becoming informed of and purchasing Defendants' products, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

iv.       Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

74)       WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

a.        A declaration that Defendant's website is in violation of the ADA;

b.        An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

c.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

d.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

f.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

g.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

h.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to

---

[1]

conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.      An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.      An award to Plaintiff of his reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.

**COUNT II – TRESPASS**

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

75)     Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

76)     Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

77)     The "pop-up" or banner notice that appears on Defendant's website does not properly audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can properly understand or give informed consent to allow tracking cookies to be placed on his computer.

78)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

79)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

80)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

OUR USE OF COOKIES AND GIFS

We may collect information about how users navigate through a Site during thousands of Site visits. For example, we use Cookie technology:

To track which pages on Sites our visitors view and which web browsers they use. We analyze this information in aggregate to improve the Sites by making them more responsive to the needs and preferences of our users.

When you register on the Sites so that each time you visit the Sites we can remember your specified area of interest and any other information you have voluntarily provided and saved.

To track the items you placed in your shopping cart during a single shopping session and to enable us to provide better service to you by maintaining your shopping cart between visits (so you do not have to enter each item again).

To help us understand our Site traffic patterns to determine our visitors' interests and needs.

Because we rely on Cookies to make the shopping experience easier and more tailored to your needs, your browser must be set to accept Cookies before you can place an order. If you would like more information about how Cookies work, go to http://www.cookiecentral.com.

We may use a software technology called clear gifs (a.k.a. Web Beacons/Web Bugs) that helps us better manage content on the Sites by informing us about the content that is of interest to our customers. Clear gifs are tiny graphics with a unique identifier, similar in function to cookies, and are used to track the online movements of web users by collecting information such as a visitor's cookie number, the time, date, duration and number of page views, a description of the page where the web beacon is placed, and details about any items that were purchased. In addition, we may use clear gifs in our HTML-based emails to let us know which emails the recipients have opened. This allows us to gauge the effectiveness of certain communications and our marketing campaigns. If

you would like to opt out of receiving these emails, see the "How You Can Control the Use of Your Personal Information" section.

We do not currently employ technology that responds to do not track signals from your browser.

BUSINESS PARTNER COOKIES AND WEB BEACONS

We may permit some of our Business Partners (such as the administrator of the online application for our co-branded credit card or our analytic service providers, social commerce providers, or personalized advertising service providers) to use Cookies or web beacons on our Sites that may collect information about your activities on the Sites as well as technical information from your computer (such as IP address, browser type, etc.) and information about your online activities across other websites and over time. We have no access to or control over these Cookies once we have given permission to our partners to set Cookies.

81)     Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his computer.  Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

82)     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest,

costs, and such further relief as the Court deems just and equitable.

### REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434